UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JOSEPHINE SCALES, o/b/o A.J.G., }<br>}<br>Plaintiff, }<br>}<br>v. }<br>}<br>CAROLYN W. COLVIN, Acting }<br>Commissioner of Social Security, }<br>}<br>Defendant. } | Case No.: 7:16-cv-00362-RDP |

**MEMORANDUM OF DECISION**

Plaintiff Josephine Scales ("Plaintiff" or "Scales") brings this action on behalf of her granddaughter A.J.G., pursuant to Title XVI of Section 1631(c) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying claims for Children's Supplemental Security Income ("CSSI"). *See* 42 U.S.C. § 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

This case sits in an interesting procedural posture. Although she was denied disability benefits on January 1, 2016, and that decision is under review here, A.J.G. is currently receiving disability benefits pursuant to a favorable November 2016 decision. (Doc. #16 at 16-17; Doc. #17 at 15; Tr. 1). A review of the history related to A.J.G.'s case is outlined below.

On January 16, 2008, Attorney Carla C. Ray applied on behalf of then-thirteen-year-old A.J.G. for child SSI alleging disability beginning September 1, 2007. (Tr. 359, 367). Later, on January 31, 2008, Plaintiff, A.J.G.'s grandmother, filed an application on behalf of A.J.G. for

child SSI. (Tr. 373).[1] The Social Security Administration ("SSA") denied the application on May 6, 2008. (Tr. 178). Plaintiff then requested a hearing by an Administrative Law Judge. (Tr. 186-89). Administrative Law Judge Charles A. Thigpen ("ALJ Thigpen") heard the case on July 28, 2010. (Tr. 94-114). On August 16, 2010, ALJ Thigpen found A.J.G. not disabled under the Act. (Tr. 118-39). Plaintiff requested review of that decision on August 27, 2010. (Tr. 213). On December 20, 2011, the Appeals Council remanded the decision for a rehearing by ALJ Thigpen because he had issued his decision before the expiration of a 30-day period he had set for post-hearing development of the record. (Tr. 140-43; *see also* Tr. 108-109, 113).

On May 24, 2012, A.J.G. turned eighteen. (Tr. 367). After a second hearing on July 18, 2012 (Tr. 77-93), ALJ Thigpen again denied Plaintiff's claim. (Tr. 145-73). Plaintiff again requested review. (Tr. 7). On March 21, 2014, the Appeals Council again remanded the decision for a third hearing, this time because the ALJ did not provide Plaintiff with time to respond to medical interrogatories propounded to Dr. Sydney Garner. (Tr. 174-77).

Administrative Law Judge Mary E. Helmer ("the ALJ") held the third hearing on August 21, 2015. (Tr. 35-76). After the ALJ rendered an unfavorable decision on September 22, 2015 (Tr. 9-329), the Appeals Council denied Plaintiff's request for another rehearing. (Tr. 1-8). The ALJ's decision then became the final decision of the Commissioner and therefore a proper subject of this court's appellate review. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

## II. Relevant Facts

A.J.G. was born May 25, 1994 (Tr. 583), she turned 18 on May 24, 2012 (Tr. 367), and she was 22 years old at the time of the third hearing. (Tr. 35). Plaintiff alleges that A.J.G. has been mentally disabled since September 1, 2007. (Tr. 359). A.J.G. has never worked. (Tr. 17).

---

[1] The application dated January 31, 2008 is in the name of "JOSEOHINE [sic] SCALES." (Tr. 373). A later re-application of July 28, 2011 on behalf of A.J.G is in the name "JOSEPHINE GREENE," apparently a typographical error. (Tr. 379). An amendment corrects the name to "JOSEPHINE SCALE [sic]." (Tr. 386).

2

In July 2007, Plaintiff sought treatment for A.J.G.'s poor school performance, behavior problems, and defiance. (Tr. 579). On July 5, 2007, Dr. Shakil Khan saw A.J.G. through the Children's Services of the Jefferson-Blount-St. Clair Mental Health Authority. (Tr. 579-81). Dr. Khan diagnosed A.J.G. with intermittent explosive mood disorder, oppositional defiant disorder, parent-child relationship problem, and learning disorder. (Tr. 580). Dr. Khan assigned A.J.G. a Global Assessment of Functioning ("GAF") score of 60 and prescribed Trileptal, which A.J.G. continued taking at least through July 2010. (Tr. 100-101, 580-81).

In connection with Plaintiff's initial application, psychologist Dr. John Neville produced a consultative evaluation of A.J.G., recorded A.J.G.'s full-scale IQ of 84, and diagnosed her with oppositional defiant disorder. (Tr. 585-86). Reviewing the record for completion of the SSA Childhood Disability Evaluation Form, psychiatrist Dr. Samuel Williams diagnosed A.J.G. with "less than marked" limitations in any functional domain. (Tr. 587-92).

After the SSA denied Plaintiff's initial application, A.J.G. was admitted to Hill Crest Hospital for behavioral issues after she became violent with adults in the home, pulled knives on family members, and was verbally aggressive. (Tr. 649). A.J.G. remained in the hospital from December 28, 2008 through January 9, 2009. (Tr. 61-62, 648-58). She was discharged with diagnoses of ADHD, conduct disorder, and parent-child relationship problem. (Tr. 648). Later that year, on July 14 and August 18, 2009, psychologist Dr. Amy Cooper evaluated A.J.G. at the UAB Civitan-Sparks Clinic on referral due to concerns regarding poor academic performance. (Tr. 605-18). Dr. Cooper recorded a full-scale IQ of 77 (Tr. 607) and diagnosed learning disorder, ADHD by history, and depression by history (Tr. 611). Dr. Cooper assigned A.J.G. a GAF score of 63. (*Id.*).

For more than two years following her release from the hospital, A.J.G. had no

documented episodes. But on September 27, 2011, Plaintiff took A.J.G. to Hill Hospital in York, Alabama for an overdose of Naprosyn. (Tr. 674). Plaintiff testified that the overdose was intentional (Tr. 61-64), but hospital notes indicate that the overdose was accidental (Tr. 674).

In connection with the second hearing by ALJ Thigpen, psychologist Dr. Sydney Garner prepared a medical opinion. (Tr. 681-85). Dr. Garner specified A.J.G.'s medical impairments as ADHD, oppositional defiant disorder, mood disorder, learning disorder, and borderline intellectual functioning. (Tr. 681). According to Dr. Garner, A.J.G.'s impairments did not meet or equal any impairment described in the Listing of Impairments. (Tr. 681-82). Dr. Garner specifically concluded that the impairments did not meet Listing 112.11 or Listing 112.08. (Tr. 682). Following the second denial by ALJ Thigpen, A.J.G. continued taking medication, improved her academic performance, and had no further behavioral problems. (Tr. 714-15).

After A.J.G. turned eighteen in May 2012, she received no more treatment. (Tr. 20, 38, 41). Plaintiff and A.J.G. both testified that, after A.J.G. turned eighteen and lost eligibility for Medicaid, Plaintiff could no longer afford A.J.G.'s treatments. (Tr. 41, 58-60). However, as of August 2015, A.J.G. testified that she takes medications daily, which control her mood and temper. (Tr. 44-45, 50-51, 58). A.J.G. did not graduate from high school (Tr. 55-56), does not currently work (Tr. 39-40), and watches television for approximately thirteen hours a day (Tr. 41-43).

### III. ALJ Decision

In this case, disability must be determined in relation to two distinct time periods, and different standards apply with respect to those time periods. For the period before A.J.G. turned eighteen, January 16, 2008 through May 23, 2012, the ALJ must determine disability using the child standard. 20 C.F.R. § 416.924(a). For the period *after* May 24, 2012 (when A.J.G. turned

18) through the date of the decision (here, September 22, 2015), the ALJ must determine disability using the adult standard. 20 C.F.R. § 404.1520. Each distinct standard was considered by the ALJ.

### A. The ALJ Determined that A. J. G. was Not Disabled as a Child

For a child to be found disabled under the Act, she must "have a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(c)(a)(3)(C)(i); 20 C.F.R. § 416.906. A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

Social Security regulations provide a three-step test for determining whether a child is disabled. 20 C.F.R. § 416.924(a); *see e.g., Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999); *Cole v. Barnhart*, 436 F.Supp.2d 1239, 1241 (N.D. Ala. 2006). First, the ALJ must determine whether the child is engaging in substantial gainful activity. "Substantial gainful activity" is work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 416.972. If the child engages in substantial gainful activity, then the child cannot claim disability regardless of the child's medical condition. 20 C.F.R. § 416.924(b). If the child is found to not be engaging in substantial gainful activity, the analysis proceeds. Here, the ALJ found that, as a child, A.J.G. had not engaged in substantial gainful activity. (Tr. 17; *see also* Tr. 124, 153).

In the second step, the ALJ must determine whether the child has a medically determinable impairment or a combination of medical impairments that is "severe" under the

Act. 20 C.F.R. § 416.924(c). At this stage of the analysis, "severe" as understood under Social Security regulations requires that the child have a medically determinable impairment, or an impairment or combination of impairments, which are more than a slight abnormality that causes merely minimal functional limitations. *Id.* Absent such a "severe" impairment, the child may not claim disability. *Id.* Here the ALJ found that "[b]efore attaining age 18, [A.J.G.] had the following severe impairments: oppositional defiance disorder, attention deficit hyperactivity disorder by history, learning disability/borderline intellectual ability, and impulse control disorder [20 C.F.R. § 416.924(c)]." (Tr. 17; *but see also* Tr. 124, 153).

Third, the ALJ must determine whether the child's impairment meets or medically equals an impairment included in the Listing of Impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (a "Listing"). 20 C.F.R. § 416.924(d). If the child's impairment meets a Listing, the child is declared disabled. *Id.* The ALJ determined that "before attaining age 18 [A.J.G.] did not have an impairment that met or medically equaled [a Listing]." (Tr. 21; *see also* 125, 154). In reaching this conclusion the ALJ stated that she had compared claimant's impairments to listed impairments for Personality Disorders, Attention Deficit Hyperactivity Disorder, and Somatoform Disorder. (Tr. 21-22).

Alternatively, even if the three-step test is not met, a child may be declared disabled if the child's impairment or combination of impairments functionally meets a Listing where the ALJ considers the child's capacity with regard to six domains. 20 C.F.R. § 416.926a. A domain is a broad area of functioning. The six domains considered in determining whether a child's impairment functionally equals a listing are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R.

§ 416.926a(b)(i)-(iv). To functionally equal a Listing, the child's impairment or combination of impairments must result in "marked" limitations in two of the domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). It is "more than moderate" but "less than extreme" and is equivalent to the functioning one "would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* An "extreme" limitation is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). A finding of "extreme" limitation requires a limitation that is "more than marked" and is "the equivalent of the functioning [one] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*

In assessing whether the child has a "marked" or "extreme" limitation or combination of limitations, an ALJ must consider the functional limitations from all medically determinable impairments, including impairments that are not severe. 20 C.F.R. § 416.926a(a). An ALJ must also consider the interactive and cumulative effects of the child's impairment or combination of impairments in any affected domain. 20 C.F.R. § 416.926a(c). At this final step, an ALJ considers the medical evidence. Here, the ALJ found that, as a child, A.J.G. had no limitation in domain 4 (Tr. 25), "less than marked" limitation in domains 1, 2, 5, and 6 (Tr. 22-23, 25-26), and "moderate to marked" limitation only in domain 3 (Tr. 24). As a result, the ALJ found A.J.G. was not disabled as a child. (Tr. 26-27).

### B. The ALJ Determined that A. J. G. is Not Disabled as an Adult

Adult disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20

C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). A.J.G. has not engaged in substantial gainful activity since turning 18. (Tr. 17).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Here, the ALJ found that, since turning 18, A.J.G. continues to have the same combination of severe impairments of oppositional defiance disorder, attention deficit hyperactivity disorder by history, learning disability/borderline intellectual ability, and impulse control disorder. (Tr. 17, 27; *but see also* Tr. 124, 153).

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ determined that, since turning 18, A.J.G. does not have an impairment or combination of impairments that meets or medically equals a Listing. (Tr. 27).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). The ALJ ruled that A.J.G. has the RFC to perform "a full range of work at all exertional levels," except that A.J.G.:

> should avoid unprotected heights and hazardous machinery[;] . . . should not work in loud environments[;] . . . should be limited to no assembly line production requirements[;] . . . should have few work place changes[;] . . . is limited to unskilled work activity[;] . . . is limited to no direct contact with the public[;] . . . is limited to no more than occasional supervision[;] . . . [and] can work around coworkers throughout the day, but with only occasional interaction with coworkers.

(Tr. 27).

Next, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* A.J.G. has no past relevant work. (Tr. 28).

When the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In this last part of the analysis, if the claimant cannot perform past relevant work, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). Here, the ALJ found that A.J.G. could perform jobs existing in the national economy, including garment sorter, marker, and bag inspector. (Tr. 28). The ALJ found A.J.G. was not disabled as an adult within the Act's meaning. (Tr. 29).

IV. **Plaintiff's Argument for Reversal or Remand**

Plaintiff seeks reconsideration of the decision to deny disability benefits arguing that: (1) the ALJ's decision was not supported by substantial evidence; (2) A. J. G.'s impairments meet or are medically equivalent to (childhood) Listings 112.05 and 112.03; (3) the ALJ erred as a matter

of law in evaluating the severity of A. J. G.'s mental health impairments; (4) the ALJ gave improper weight to medical opinions; and (5) that the decision should be remanded for consideration of new evidence. (*See generally* Pl.'s Br., Doc. #16). Each of these arguments is considered, in turn.

V. **Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Analysis

After careful review, the court concludes that the decision of the Commissioner is due to be affirmed.

### A. Substantial Evidence Supports the ALJ's Decision

Although Plaintiff sets out five separate grounds for remand or reversal of the Commissioner's decision, Plaintiff's central ground for review questions whether substantial evidence supports the Commissioner's decision. (Pl.'s Br., Doc. #16 at 7-17). Specifically, Plaintiff contends that: (1) the hearing transcript and testimony contains errors (*id.* at 7-10); (2) A.J.G.'s impairments meet or are medically equivalent to a listed impairment (*id.* at 10-11); (3) the childhood domains of mental health were improperly analyzed (*id.* at 12-14); (4) improper weight was given to the medical opinions of A.J.G.'s treating sources (*id.* at 15-16); and (5) the case should be remanded for new evidence (*id.* at 16-17). Each potential ground for reversal is considered, in turn.

### B. Transcript and Hearing Errors

Plaintiff next argues that errors in the hearing transcript and with the hearing testimony in general are grounds to reject the ALJ's decision. (Pl. Br., Doc. #16 at 7-10). As to errors in the transcript, Plaintiff argues: (1) an error regarding the date of onset of disability; (2) an error regarding whether the hearing was live or via video recording; and (3) an error regarding whether A.J.G. has the ability to afford treatment.[2] (Pl. Br. at 7-8). As to the hearing testimony itself, Plaintiff argues that the ALJ failed to consider: (1) that A.J.G. struggled to provide responsive testimony; and (2) that the gap in treatment was

---

[2] The ALJ addressed A.J.G.'s non-compliance with medication on a few occasions throughout her opinion. She noted that A.J.G. threw away her medication (Tr. 18), and that "when she is non-complaint, her depression returns" (Tr. 19). The ALJ found that A.J.G. "does not like taking the medicine." (Tr. 20). She also concluded that "claimant has flare ups in her condition that are temporary which are due to factors the claimant could avoid by taking her medication as prescribed." (Tr. 20). The ALJ did not reference Plaintiff's testimony that once A.J.G. reached the age of 18, Plaintiff was no longer covered by Medicaid and Plaintiff was not able to afford medical care for claimant. (Pl. Br., Doc. #16 at 9). However, Plaintiff clearly testified that although she no longer sought "treatment," she continued to have medication prescribed to her. (Tr. 44-45).

While Plaintiff is correct that poverty may excuse noncompliance with treatment, *Ellison*, 355 F.3d at 1275, here that was not the sole cause for failure to medicate. Rather the ALJ extensively discussed the medical evidence of record, including claimant's failure to take her medicine as prescribed. *See Sugarman v. Berryhill*, 2017 WL 4868809 at *5 (S.D. Fla. Oct. 27, 2017) ("Here, … the ALJ's determination that Plaintiff did not suffer from a disability was not 'inextricably tied to the finding of noncompliance.'").

11

due to an inability to pay. (Pl. Br. at 9-10).

The problem with these arguments is that, even assuming their veracity, they fail to explain how they demonstrate a lack of substantial evidence to support the ALJ's decision. *Carnes v. Sullivan,* 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *Sewell v. Bowen,* 792 F.2d 1065, 1067 (11th Cir. 1986) (holding that even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence). The ALJ's decision did not solely rely on any of these purported errors in reaching the conclusion that A.J.G. was not disabled. Therefore, this ground for remand or reversal fails.

### C. The ALJ Correctly Found that A.J.G.'s Impairments Do Not Meet Listings 112.05 or 112.03

Before she attained the age of 18, A.J.G. was found to have the following severe impairments: oppositional defiance disorder, attention deficit hyperactivity disorder by history, learning disability/borderline intellectual ability, and impulse control disorder. (Tr. 17). However, this combination of impairments was determined to not meet one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1, Part A or B. (Tr. 21).

Plaintiff argues that A.J.G.'s impairments meet Childhood Listings 112.05D (Intellectual disorder) and 112.03 (Schizophrenia spectrum and other psychotic disorders). (Pl. Brief, Doc. #16 at 10). While the ALJ explicitly considered the Listings for Personality Disorders (112.08), Attention Deficit Hyperactivity Disorder (112.11), and Somatoform Disorder (Impulse Control Disorder), she did not explicitly consider those for Intellectual Disability and Schizophrenia Spectrum and other psychotic disorders. Plaintiff made this argument at the administrative level and makes it again here, noting that A.J.G. "failed the 9th grade, she did not receive a high school diploma;" she has "emotional and behavioral functioning issues, learning disability and ADHD;" and that "evidence of record from Hill Crest Hospital in 2009 and 2011 indicate she meets the

Childhood Listing of Impairment at 112.03." (*Id.*). All of this is supported by the record. But it was thoroughly considered by the ALJ and it is beyond the court's scope of review to reassess the evidence. *See e.g.*, 42 U.S.C. § 405(g); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) ("This court may not substitute its own judgment for the Secretary's nor re-evaluate the evidence unless the decision is clearly illogical or unsubstantiated."). Further, although the ALJ did not explicitly reference Listings 112.05 and 112.03, she properly cited the three-step process and considered all of the evidence related to those Listings. *Gray v. Commissioner*, 454 Fed. Appx. 748, *750 (11th Cir. Dec. 8, 2011). It is well settled that "a finding that a claimant's impairments are not contained in the Listings may be implied from an ALJ's decision." *Wilson ex rel. T.M.W. v. Colvin*, 2013 WL 788075 at *4 (S.D. Ala. March 1, 2013); *see also McCorkle v. Berryhill*, 2017 WL 1035684 at *8 (N.D. Ala. March 17, 2017). Because there is substantial evidence which supports the Commissioner's decision that A.J.G.'s impairments do not meet Listings 112.05 or 112.03, this ground for reversal fails.

### D. The ALJ Did Not Err in Evaluating the Severity of A.J.G.'s Impairments

Next, Plaintiff argues that the ALJ erred in evaluating the severity of A.J.G.'s mental health impairments. (Pl. Brief, Doc. #16 at 12-14). In support of this argument, Plaintiff outlines the domains of function in accordance with SSR 9-8p and outlines evidence supporting A.J.G.'s limitations in each. (*Id.*). While Plaintiff accurately states the law and summarizes the evidence, the ALJ also accurately navigated the legal framework for evaluating severity of limitations and had substantial evidence upon which to base her decision. *See* 20 C.F.R. § 416.926a. Specifically, the ALJ found A.J.G. had a *less than marked* limitation in acquiring and using information, attending and completing tasks, ability to care for herself and in health and physical well-being; *no limitations* in moving about or manipulating objects; and a *moderate to marked*

13

limitation in interacting and relating with others. (Tr. 21-26). Because A.J.G. was not found to have a marked limitation in two domains or an extreme limitation in one domain, the ALJ concluded that A.J.G.'s impairments did not functionally equal the listings and she was not disabled. (Tr. 27).

As to acquiring and using information, the ALJ considered A.J.G.'s learning disability and her full-scale IQ score. (Tr. 23). As to attending and completing tasks, the ALJ considered A.J.G.'s diagnosis of ADHD and the prescription medicine taken to control that condition. (Tr. 23). As to interacting and relating with others, the ALJ considered A.J.G.'s problems with following rules, respecting authority, and sporadic "marked" behavioral problems. (Tr. 24). With respect to moving about and manipulating objects, the ALJ found no record evidence to support any limitation. (Tr. 25). And, related to caring for herself, the ALJ considered A.J.G.'s difficulty with coping skills. (Tr. 26). Finally, as to health and physical well-being, the ALJ considered that A.J.G. had taken medication in the past with good response and the lack of evidence of adverse medication side effects. (Tr. 26). These findings are consistent with those of state agency psychiatrist Dr. Samuel Williams, who confirmed the severity of A.J.G.'s oppositional defiance disorder, but determined that it caused only less than marked limitation in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. (Tr. 18, 587-92). The findings are also consistent with the opinions of medical expert Dr. Sydney Gardner who found A.J.G.'s IQ above the mental retardation range, only sporadic behavioral problems, and periodic marked impairment in social functioning. (Tr. 19, 681-85).

Because the ALJ had substantial evidence upon which to base her decision regarding the functional areas of limitation, this ground for reversal is due to be denied.

### E. Substantial Evidence Supports the Weight Afforded to the Medical Opinions

Plaintiff argues that the ALJ improperly weighted the opinions of medical professionals, giving great weight to the opinion of Dr. Neville, the consulting physician, while not assigning a specific weight to Dr. Khan, a physician whom Plaintiff argues was the treating physician. (Pl. Br., Doc. #16 at 15-16). The court disagrees.

The ALJ's weighting of a medical source's opinion depends on three factors: (1) the medical source's relationship with the claimant, (2) the evidence the medical source presents to support his opinion, and (3) the degree of consistency between the medical source's opinion with the medical evidence in the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Under the "treating physician rule," a treating physician's opinion is entitled to substantial weight and the ALJ must articulate good reasons to discredit it. *MacGregor v. Bowen*, 786 F.2d 105, 1053 (11th Cir. 1986). To be a treating physician, a doctor must have had an "ongoing relationship" with the patient. *Nyberg v. Commissioner of Social Security*, 179 F. App'x 589, 591 n.3 (11th Cir. 2006) (quoting 20 C.F.R. § 404.1502). The ALJ may have good reason for discounting the opinion of the treating physician when, for example, the physician's opinion is unsupported by objective medical evidence or when the opinion is inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159-60 (2004); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

Dr. Khan is not A.J.G.'s treating physician for purposes of this rule. The record demonstrates that A.J.G. had a single appointment with Dr. Khan. (Tr. 17, 578-81). Records from A.J.G.'s first hospitalization at Hill Crest list Dr. Khan as her physician. (Tr. 648-57). On some of those records, Dr. Khan's "signature" is stamped (Tr. 648-57), but there is no record that Dr. Khan met with A.J.G. after their initial visit. A.J.G. remained in the hospital for 13 days (Tr. 649), but that is not considered an "ongoing relationship" with a doctor. *Nyberg*, 179 F. App'x at

15

591 n.3; *see also Eyre v. Commissioner of Social Security*, 586 F. App'x 521, 523 (11th Cir. 2014) (doctor was not a treating physician when he did not treat the claimant "on a regular basis before the ALJ's decision"); *Chaney-Everett v. Astrue*, 839 F. Supp.2d 1291, 1303 (S.D. Fla 2012) (doctor was not a treating physician when she only saw the patient twice and had no ongoing relationship). As such, the ALJ was under no obligation to give the opinion of Dr. Khan substantial weight or to articulate good reasons for discrediting it. Of course, Dr. Khan's diagnoses and the GAF score he assigned Plaintiff are consistent with the opinion of Dr. Cooper, and Dr. Cooper's diagnoses and opinions were afforded great weight. (Tr. 19, 605-18). For these reasons, this ground for reversal is due to be denied.

**F. The Subsequent Favorable Decision is Not Evidence Requiring a Remand**

Finally, Plaintiff contends that the ALJ's decision should be remanded for the consideration of a favorable decision issued in November 2016. (Pl. Br., Doc. #16 at 16-17). A.J.G. was approved for benefits after a consultative examination ("CE") on November 16, 2016. (*Id.* at 16). The consultative examination was performed by Dr. Brian Robert McFarland and was reportedly available to the Commissioner when the case was remanded to allow for additional time for completion of the transcript. (*Id.*). Interestingly, however, the CE is not part of the record before this court, nor is the November 2016 decision which approved benefits.

Here, Plaintiff does not seek remand pursuant to sentence six of 42 U.S.C. § 405(g). *Ingram v. Commissioner*, 496 F.3d 1253, 1267 (11th Cir. 2007) (holding that sentence six provides the "sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in district court."). She does, however, argue that the existence of a subsequent favorable decision is relevant and probative to the issues presented in this appeal as "evidence demonstrating that the disorder began prior to the age of 22." (Pl. Br., Doc. #16 at 17).

This argument, even if it had been properly presented under § 405(g), is a non-starter. In the Eleventh Circuit, a subsequent favorable decision is not itself evidence for the ALJ to reconsider. *Hunter v. Social Security Administration, Commissioner*, 808 F.3d 818, 821-22 (11th Cir. 2015) ("A decision is not evidence any more than evidence is a decision."). Rather, great deference is given to the ALJ's fact findings to determine whether substantial evidence supports a decision. *Id.* And, in light of the required deferential review, the court concludes there is no inconsistency in finding that:

> [separate] ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate. Because of that possibility, the mere existence of a later favorable decision by one ALJ does not undermine the validity of another ALJ's earlier unfavorable decision or the fact findings upon which it was premised.
>
> *Id.* at 822.

For these reasons, this ground for reversal is due to be denied.

## VI. Conclusion

The court concludes that the ALJ's determination that A.J.G. is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this Memorandum of Decision will be entered.

**DONE** and **ORDERED** this January 12, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE